UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | CR 05-252 (JMR/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Carey A. Kruger, | |
| Defendant. | |

Richard A. Newberry, Assistant United States Attorney, for the Government
Andrew H. Mohring, Assistant Federal Public Defender, for the Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on September 21, 2005, on Defendant's Motion to Suppress 5/5/05 and 5/6/05 Statements [#23]. At the hearing, the Court received testimony from United States Postal Inspector James McCollow. The Government submitted two exhibits into evidence. These two exhibits were the United States Postal Inspection Service Warning and Waiver of Rights forms Defendant signed on May 5, 2005, and May 6, 2005. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's Motion be denied.

**I. FINDINGS OF FACT**

Defendant Carey A. Kruger has been indicted for theft of mail, embezzlement of mail, and delay of mail in contravention of 18 U.S.C. §§ 1709 and 1703(a). During the course of the investigation, United States Postal Inspector James McCollow interviewed the Defendant on May 5, 2005, and May 6, 2005.

### A.     The May 5, 2005 Interview

United States Postal Inspector McCollow has been employed with the United States Postal Service for over 18 years. His duties include protecting the United States Postal Service and its mail customers from criminal attack. Inspector McCollow was the primary agent investigating the present matter. Inspector McCollow had received reports of missing mail previous to May 5, 2005. Inspector McCollow developed Defendant, a United States Postal Carrier, as a suspect, because he had received information from the Anoka County Sheriff's Office that Defendant's boyfriend made a purchase with a gift card that had been reported missing by a mail customer. On May 5, 2005, Inspector McCollow put four mail pieces in a mailbox on Defendant's route and put the mailbox under surveillance. As a result of this surveillance Defendant was observed removing the four mail pieces from the mailbox. After Defendant picked up the four pieces of mail it was ascertained that Defendant never deposited these mail pieces at the post office.

After learning that Defendant did not deposit the four mail pieces at the post office, Inspector McCollow and another United States Postal Inspector went to Defendant's residence. Upon arriving at Defendant's residence, Inspector McCollow observed that Defendant's vehicle was not present in the driveway. Inspector McCollow knocked on Defendant's door and was informed by the man who answered the door that Defendant was not home. Ten minutes after learning that Defendant was not home, Inspector McCollow contacted the Postmaster who reported that Defendant had just called the Postmaster to inquire as to why there were two postal inspectors at her home. The Postmaster then gave Inspector McCollow Defendant's cellular telephone number and Inspector McCollow used his cellular telephone to contact Defendant on her cellular telephone. During the

subsequent telephone conversation, Defendant agreed to meet with Inspector McCollow and speak with him. Inspector McCollow and his partner met Defendant as she drove up to her residence. Defendant asked Inspector McCollow to wait outside while she dropped her son off in the house. After she dropped her son off in the house, Defendant returned outside to speak with Inspector McCollow and his partner. Inspector McCollow began interviewing Defendant at approximately 7:55 p.m.

At the beginning of the interview, Inspector McCollow identified himself and his partner as Inspectors for the United States Postal Service. Inspector McCollow told Defendant that he wanted to talk to her regarding mail that had been reported missing on her route. Inspector McCollow asked Defendant if she minded speaking inside the postal vehicle that was parked in the driveway. Defendant agreed to continue the discussion inside the vehicle. Inspector McCollow sat in the drivers seat of the vehicle, while Defendant sat in the passenger seat and the other Inspector sat in the back seat. Inspector McCollow testified that at no time was any force used on Defendant, nor were any weapons displayed during the interview. Inspector McCollow testified that neither inspector made any threats or promises to Defendant, nor did they restrain her in any way. Inspector McCollow testified that Defendant never asked to leave the vehicle nor was she ever denied the ability to leave the vehicle. Defendant was not placed under arrest or in handcuffs at any time during the interview, or upon its conclusion. Inspector McCollow testified that the interview was not recorded, but that his partner took notes during the interview. Inspector McCollow stated that Defendant asked what would happen to her job as a result of the investigation. Inspector McCollow testified that he told Defendant that he would write a report and give it to the Postmaster, and that it would be up to the Postmaster to determine whether she could continue her employment.

After introducing himself and explaining the purpose of the interview, Inspector McCollow testified that he supplied Defendant with a copy of the United States Postal Inspection Service Warning and Waiver of Rights Form. See Govt. Ex. 1. Inspector McCollow testified that he read over the warning with Defendant after he gave her a copy of the form. After Inspector McCollow read over the warning with Defendant, he asked her to acknowledge that he had read the statement of rights to her and that she understood what her rights were. Id. Defendant signed the top portion of the form at 7:53 p.m. Id. Inspector McCollow informed Defendant that he could not continue speaking with her unless she waived the rights he had just explained to her and signed the bottom portion of the form. Defendant waived her rights at that time and signed the waiver portion of the form at 7:53 p.m. Id. Defendant's signatures on this form were witnessed by Inspector McCollow and his partner. Inspector McCollow stated that it appeared that Defendant understood the purpose of the interview at the time she waived her rights. Defendant never asked to speak with an attorney nor did she ask to stop the interview or exercise her right to remain silent.

After issuing the Miranda warning to Defendant, Inspector McCollow testified that he told Defendant that if she was truthful things would be easier for her. Defendant admitted that she took the four letters and that she did not deposit them at the post office as she was required to do. Inspector McCollow testified that Defendant told him that she immediately put the letters in the dumpster of a gas station upon first hearing that United States Postal Inspectors were at her house. Inspector McCollow asked Defendant to retrieve the four letters from the dumpster. Inspector McCollow made an appointment to meet Defendant at a Perkins restaurant in Blaine on May 6, 2005, at which time Defendant agreed to retrieve the letters from the dumpster and bring them to the meeting. At that point the May 5, 2005 interview terminated. Inspector McCollow testified that

this interview lasted approximately 15 minutes.

### B. May 6, 2005 Interview

On May 6, 2005, at approximately 8:25 a.m., Defendant arrived at the Perkins restaurant in Blaine. The same two Postal Inspectors, Inspector McCollow and his partner, were present at the Perkins for this meeting. Inspector McCollow requested a booth in the back of the restaurant. Both men began the interview by identifying themselves as postal inspectors. All three ordered drinks before beginning the substance of the interview. After the drinks were delivered to the table, the inspectors began the interview. Inspector McCollow testified that he told Defendant that the purpose of this interview was to follow-up on the topic discussed on May 5, 2005.

After Inspector McCollow and his partner identified themselves as Postal Inspectors and described the purpose of the interview, Inspector McCollow again produced a United States Postal Inspection Service Warning and Waiver of Rights Form. Govt. Ex. 2. Inspector McCollow testified that the waiver form used on May 6, 2005, was identical to the form used on May 5, 2005. Inspector McCollow stated that he used the waiver form in the same way with Defendant on May 6, 2005, as he had on May 5, 2005. After being informed of her rights, Defendant signed the top portion of the form at 8:32 a.m. Id. Defendant then proceeded to waive her rights and acknowledged her waiver by signing the waiver portion on the bottom of the form at 8:32 a.m. Id. Defendant's signature was witnessed by both Inspector McCollow and his partner. Id. Inspector McCollow testified that Defendant never asked to speak with an attorney, never asked to stop the interview, and never stated that she wished to exercise her right to remain silent. Inspector McCollow stated that Defendant was never denied permission to leave the booth at Perkins and at no time was Defendant's movement restrained during the interview. Neither inspector displayed any weapons or any show of physical

force during the interview. Inspector McCollow testified that Defendant was never placed under arrest on May 6, 2005, nor was Defendant ever restrained in handcuffs. Inspector McCollow further stated that neither himself nor his partner issued any threats or promises to elicit information or cooperation from Defendant.

Once Defendant waived her rights and signed the waiver form, Inspector McCollow asked Defendant if she brought the four letters that she admitted to taking on May 5, 2005. Defendant stated that she went back to the gas station dumpster where she discarded the letters and that the dumpster had been emptied. Defendant also admitted that she had taken mail on three previous occasions, and she estimated that she received a total of $60.00 from the mail she had previously taken.

## II.  CONCLUSIONS OF LAW

**A.     Defendant's Statements During the Interviews on May 5, 2005, and May 6, 2005, are Admissible.**

Defendant contends that her statements should be suppressed because these statements were the result of interrogation, under circumstances that amount to custody, and were made without the benefit of a valid advice-of-rights process. (See Def.'s Mot. to Suppress). Defendant also claims that her statements should be suppressed because they were made without the assistance or benefit of counsel in violation of her Fifth and Sixth Amendment rights under the United States Constitution. Id.

### 1. Defendant Was Not In Custody When She Made The Statements

Defendant argues that the statements she made to Inspector McCollow were the result of interrogation, under circumstances that amount to custody, and were made without the benefit of a valid advice-of-rights process. Id. Miranda v. Arizona and its progeny require that a Miranda

warning be issued any time a suspect is in custody and is subject to interrogation by law enforcement officials. 384 U.S. 436, 484 (1966). The Supreme Court has defined interrogation to include "express questioning [and] any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301(1980). In the present case, Inspector McCollow asked Defendant specific questions regarding her involvement with the missing mail. It is undisputed that Defendant was interrogated by Inspector McCollow during both interviews. Having established that Defendant was interrogated, this Court must determine whether Defendant's statements were made under circumstances that amount to custody.

Pursuant to Miranda v. Arizona, 384 U.S. at 444, "an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir.1990). Any statements taken in violation of this directive are subject to suppression. Miranda, 384 U.S. at 476. Voluntary statements by a suspect not in custody, however, do not require the protection of Miranda. Id. at 478-79. Thus, warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." Oregon v. Mathiason, 429 U.S. 492, 495 (1977); United States v. LeBrun, 363 F.3d 715, 720-21 (8th Cir.2004).

A person is "in custody" for Miranda purposes if the person is either under "formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way." Griffin, 922 F.2d at 1347; Berkemer v. McCarty, 468 U.S. 420, 429 (1984). The Court examines the extent of the physical or psychological restraints placed on the suspect during

interrogation in light of whether a "reasonable person in the suspect's position would have understood his situation" to be one of custody. Griffin, 922 F.2d at 1347, quoting Berkemer, 468 U.S. at 442. The test is to be applied objectively: if, under the circumstances of a particular case, the suspect believes his freedom has been curtailed to the same extent an arrest would have curtailed it, and if the suspect's belief is reasonable, then the suspect is in custody. Griffin, 922 F.2d at 1347; citing Beheler, 463 U.S. at 1125; Berkemer, 468 U.S. at 440. A determination of custody can only be reached upon considering the totality of the circumstances. United States v. Carter, 884 F.2d 368, 370 (8th Cir.1989), citing United States v. Lanier, 838 F.2d 281, 285 (8th Cir.1988) (per curiam).

The relevant factors to be considered in making a determination of custody include: (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning. Id. at 1349.

In order to issue a finding of custody a Court need not find that all of the above six factors are met. Griffin, 922 F.2d at 1349, citing United States v. Longbehn, 850 F.2d 450, 452-53 (8th Cir.1988). The first three factors are characterized as mitigating factors, so that the presence of one or more of these factors tends to mitigate the conclusion that a person was in custody at the time they were questioned. Griffin, 922 F.2d at 1349. Conversely, the last three factors are characterized as aggravating factors, so that the presence of one or more of these factors weighs in favor of a finding

of custody at the time of questioning. Id. When balancing these factors, "a particularly strong showing with respect to one factor may compensate for a deficiency with respect to other factors." Id., citing South Dakota v. Long, 465 F.2d 65, 70 (8th Cir.1972).

Looking at the six factors set out by the Eighth Circuit in Griffin, Defendant was not in custody when she spoke to Inspector McCollow on May 5, 2005, or May 6, 2005. First, Inspector McCollow testified that Defendant agreed to meet with him to discuss the issue of the missing mail on May 5, 2005. Hence the questioning by Inspector McCollow was voluntary. Similarly, Defendant agreed to meet with Inspector McCollow at the Perkins restaurant on May 6, 2005. Defendant drove herself to the Perkins restaurant where she voluntarily met with Inspector McCollow and his partner. The May 6, 2005, questioning by Inspector McCollow was voluntary. Although Inspector McCollow testified that Defendant was never informed at the time of either questioning that she was free to leave, Defendant never requested to leave the vehicle on May 5, 2005, nor did she request to leave the Perkins restaurant on May 6, 2005.

The second factor in the Griffin analysis requires this Court to consider Defendant's freedom of movement during the interrogation. A suspect with unrestricted freedom of movement is likely not in custody, see United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir.1989). While a suspect who has been placed under guard or who must remain at all times where law enforcement officers can see him is more likely to be in custody. See United States v. Carter, 884 F.2d at 372. On May 5, 2005, Defendant was questioned by two law enforcement officers in the passenger compartment of a postal vehicle. Inspector McCollow stated that at no time was Defendant restrained in her freedom of movement during the interview. Defendant met the Inspectors outside of her residence and proceeded inside her home to drop off her son before returning outside to speak with Inspector

9

McCollow. Defendant met Inspector McCollow outside of her home of her own volition, and could have left the interview at any time. On May 6, 2005, Defendant was questioned by the same two law enforcement officers in a public place, the Perkins restaurant. Inspector McCollow stated that at no time was Defendant restrained in her freedom of movement during the May 6, 2005, interview. Defendant drove herself to the Perkins restaurant and proceeded to sit down at a booth with the two Postal Inspectors. Presumably Defendant entered the Perkins restaurant of her own volition, and could have left the restaurant at any time.

Considering the third factor, the Defendant voluntarily acquiesced to Inspector McCollow's official request to respond to questions. The Eighth Circuit "has frequently found custody lacking where suspects take the initiative to offer statements or voluntarily arrange for questioning." Griffin, 922 F.2d at 1351 (citation omitted). In the present case Inspector McCollow called Defendant on May 5, 2005, on her cellular telephone and requested that Defendant meet with him. Defendant agreed to meet with Inspector McCollow that night at her home. Although Inspector McCollow initiated the contact by calling Defendant, Defendant was not obligated to meet with him and voluntarily agreed to do so. Similarly, on May 5, 2005, Inspector McCollow asked to meet with Defendant again to further discuss the issue of the missing mail. Defendant and Inspector McCollow arranged to meet on May 6, 2005 at the Perkins restaurant in Blaine. Under Griffin, Defendant's "voluntary arrangements for questioning" on both May 5, 2005, and May 6, 2005, weigh in favor of a finding that the interview was non-custodial.

The fourth factor in the Griffin analysis is whether strong arm tactics or deceptive stratagems were used during the police interrogation. "Because strong arm tactics are more generally associated with formal arrest than with an informal encounter with police, the use of such tactics is

10

identified as an indicium of custody." Griffin, 922 F.2d at 1351 (citations omitted). Conversely, "the absence of such tactics is a factor which can assist [the court] in reaching an objective conclusion that the suspect could not have associated the questioning with formal arrest." Id. (citations omitted). In the present case, on both May 5, 2005, and May 6, 2005, Defendant was questioned regarding the four pieces of mail that she took from a residence and never deposited at the Post Office. The questions appear to have been asked and answered in a straightforward fashion. Nothing in Inspector McCollow's testimony leads this Court to believe that Inspector McCollow or his partner used strong arm tactics or deceptive stratagems when questioning Defendant on May 5, 2005, or May 6, 2005.

The fifth factor of the Griffin analysis asks whether the atmosphere of the questioning was police dominated. An interrogation that "occurs in an atmosphere dominated by the police . . . is more likely to be viewed as custodial than one which does not." Griffin, 922 F.2d at 1351-52; citing Berkemer, 468 U.S. at 438. Here, Defendant was questioned by Inspector McCollow. Inspector McCollow's partner was present during both interviews, but the interviews took place in Defendant's driveway in a postal vehicle and the Perkins restaurant, respectively. The May 5, 2005, interview lasted approximately fifteen minutes, and while Inspector McCollow did not testify as to the length of the May 6, 2005 interview, it too appears to have been brief. These facts lead the Court to conclude that the interview was not police dominated.

The final factor to be considered in the Griffin analysis is whether the suspect was placed under arrest at the termination of the questioning. In the present case, Defendant was not placed under arrest after either of the interviews.

After examining the totality of the circumstances, the Court finds that the questioning of

11

Defendant was non-custodial. None of the indicium weigh in favor of custody. Since the questioning of the Defendant was non-custodial, the agents were not required to give her a Miranda warning before conducting the interview. Nevertheless, Inspector McCollow gave the Defendant a Miranda warning before each interview.

### 2. Defendant's Statements During Both Interviews Were Given After Proper Miranda Warnings and Are Admissible.

Defendant also contends that these statements were made without the assistance or benefit of counsel in violation of her Fifth Amendment and Sixth Amendment rights. (See Def.'s Mot. to Suppress). It is well established that the Sixth Amendment is "offense specific". Texas v. Cobb, 532 U.S. 162, 167 (2001), quoting McNeil v. Wisconsin, 501 U.S. 171, 175 (1991); see also United States v. Johnson, 352 F.3d 339, 343 (8th Cir.2003). The Sixth Amendment "cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information or arraignment." Cobb, 532 F.3d at 167-68; quoting McNeil v. Wisconsin, 501 U.S. at 175 (citations and internal quotations omitted). Here, at both times she was questioned, Defendant had not been formally charged with any offense and no adversarial proceedings had been initiated against her. Defendant had no Sixth Amendment right to counsel during either interview, and the Court need only consider whether Defendant's statements were made involuntarily or were taken in violation of Miranda.

#### i. Defendant Voluntarily Made Her Statements

The Court must first determine whether Defendant's statements were made voluntarily. If the statements are induced by threats, promises, or in any other way in which the suspect's will is overborne, the statements are not voluntary and are inadmissible. See Haynes v. Washington, 373

U.S. 503, 513 (1963). The voluntariness inquiry centers upon: (1) the conduct of law enforcement officials in creating pressure; and (2) the suspect's capacity to resist that pressure. Jorgenson, 871 F.2d at 729, citing Colorado v. Connelly, 479 U.S. 157 (1986). Coercion by a state actor is a necessary element in satisfying this test. See Russell v. Jones, 886 F.2d 149, 151 (8th Cir.1989).

In the present case there is no evidence that Defendant was coerced into making a statement on May 5, 2005, or May 6, 2005. Defendant was given a Miranda warning before each interview, and Defendant waived her rights on both instances before speaking with Inspector McCollow. Defendant was not under arrest or in custody when she made her statements. Defendant voluntarily submitted to both interviews with Inspector McCollow. Nothing in the record suggests Defendant was susceptible to coercion or that her will was in any way overborne. Defendant's statements on May 5, 2005, and May 6, 2005, were made voluntarily after she received proper Miranda warnings. The statements were not taken in violation of the Fifth Amendment and they are admissible.

### ii.     Defendant Was Properly Given Her Miranda Rights

To protect the rights guaranteed by the Fifth Amendment, the Supreme Court adopted the Miranda rules to be followed during custodial interrogations. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). A suspect in custody must be warned that he has "a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney." Id. Officers must explain these rights to a suspect before questioning begins. See Id. at 469-70. Statements elicited from a suspect in violation of Miranda are inadmissible. See Stansbury v. California, 511 U.S. 318, 322 (1994). After the warnings have been given, if the suspect indicates in any manner at any time during questioning that she wishes to remain silent or that she wants an attorney, the interrogation must cease. See Miranda, 384 U.S. at 473-74.

After the reading of the Miranda warnings, a suspect's waiver of the Fifth Amendment privilege against self incrimination is only valid if it is made voluntarily, knowingly, and intelligently. See Miranda, 384 U.S. at 444; United States v. Syslo, 303 F.3d 860, 866 (8th Cir.2002). A waiver is knowing if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." Id.

Defendant was not in custody at the time she made the May 5, 2005, statement, nor was she in custody when she made the May 6, 2005, statement. Nevertheless, Inspector McCollow testified that he read the Miranda warnings to Defendant while she read the warnings along with him from her copy of the Warning and Waiver of Rights Form. Inspector McCollow testified that he did this before both interviews with Defendant. Both the form used on May 5, 2005, and the one used on May 6, 2005, were received in evidence at the hearing. Both forms clearly contain the signature of Defendant below both the warning and the waiver portion of the form. Inspector McCollow testified that on May 5, 2005, he informed Defendant that he could not continue speaking with her unless she waived the rights he had just explained to her and signed the bottom portion of the form. Inspector McCollow testified that Defendant never asked to end the interview nor did she ever ask to speak with an attorney. The Court finds that Inspector McCollow's conduct in interviewing Defendant complied with the requirements set forth in Miranda, and that Defendant validly waived her Miranda rights before giving her statements. Her statements are admissible.

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that Defendant's Motion to Suppress 5/5/2005 and 5/6/2005 Statements [#23] be **DENIED**.

DATED: October 7, 2005                    s/ *Franklin L. Noel*
                                          FRANKLIN L. NOEL
                                          United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **October 21, 2005**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **October 21, 2005** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.